FILED

2005 Jun-28  PM 03:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **MICROSOFT CORPORATION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. CV-05-PT-0730-M** |
| | ) | |
| **MICRO EXCELL, INC., and** | ) | |
| **BENTLEY JOHNSTON,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM  OPINION

This cause comes on to be heard upon plaintiff Microsoft Corporation's Motion to

Dismiss Counts Two and Three of Counterclaim, or for More Definite Statement as to Count

Three, filed on May 23, 2005, and Motion to Strike Defendants' Eighth Affirmative Defense,

filed on May 23, 2005.

## FACTS  AND  PROCEDURAL  HISTORY

Plaintiff and counter-defendant Microsoft Corporation ("Microsoft") is a Washington

corporation with its principal place of business in Redmond, Washington.  (Cmpt. ¶ 1).

Microsoft develops, markets, distributes, and licenses computer software.  (*Id.*)  Defendant and

counter-plaintiff Micro Excell, Inc. ("Micro Excell") is an Alabama corporation doing business

in Gadsden, Alabama.  (*Id.* at ¶ 2).  Micro Excell advertises, markets, installs, offers, and

distributes computer hardware and software, including Microsoft software.  (*Id.*)  Defendant and

counter-plaintiff Bentley Johnston ("Jonhston") is an officer, shareholder, and/or director of

Micro Excell.  (*Id.* at ¶ 3).  According to the Complaint, Johnston owns, operates, or otherwise

controls Micro Excell.  (*Id.*)

Microsoft filed this action on April 7, 2005, claiming that Micro Excell and Johnston infringed on Microsoft's copyrights and trademarks in its software programs and components. According to the Complaint, in or around April of 2004, Micro Excell and Johnston distributed to an investigator counterfeit Microsoft software and a computer with an unauthorized copy of Microsoft software installed on its hard disk.  (Cmpt. ¶ 11).  In a letter dated June 28, 2004, Microsoft notified Micro Excell and Johnston that their activity infringed upon its copyrights and trademarks.  (*Id.* at ¶ 12).  Microsoft asked Micro Excell and Johnston to cease their infringing activity.  (*Id.*)  Microsoft alleges that, despite this warning, in or about December of 2004, Micro Excell and Johnston distributed, to an investigator, computer systems with unauthorized copies of Windows XP Pro on their hard drives.  (*Id.* at ¶ 13).  The Complaint asserts the following claims: (1) Copyright infringement under 17 U.S.C. § 501, *et seq.*; (2) Trademark infringement under 15 U.S.C. § 1114; (3) False designation of origin, false description and representation of Microsoft Packaging under 15 U.S.C. § 1125, *et seq.*; and (4) Alabama common law unfair competition.  (*Id.* at ¶¶ 19-49).  The Complaint further requests: (5) The imposition of a constructive trust upon illegal profits; and (6) An accounting.  (*Id.* ¶¶ 50-58).

Micro Excell and Johnston filed an Answer on April 27, 2005.  The Answer asserts 14 affirmative defenses.  The eighth affirmative defense states: "Defendant pleads trademark and copyright misuse and antitrust violations."

Micro Excell and Johnston also filed a Counterclaim against Microsoft on April 27, 2005. Also named in the Counterclaim were five fictitious defendants, whose "true names will be substituted by amendment when ascertained."  The Counterclaim asserts that a competitor of

2

Micro Excell made improper allegations to Microsoft regarding the company's sale of Microsoft products. (Counterclaim ¶ 1). The Counterclaim further states that Microsoft initiated the current action without proper investigation "in an effort to intimidated and frighten small software distributors . . ." (*Id.* at ¶ 2). According to the Counterclaim, Microsoft wishes to improperly and illegally force all software distributors to purchase their products from dealers who charge "the highest possible rate" for the products. (*Id.*) Micro Excell and Johnston claim that, "[i]n essence, Microsoft is attempting to establish improper anti-competitive sanctions upon software dealers." (*Id.*) The defendants further allege that Microsoft is in a civil conspiracy, the aim of which is to damage the business, goodwill, reputation and market share of Micro Excell. (*Id.* at ¶ 3). Johnston and the company assert that Microsoft published, or caused to be published, false, defamatory statements, which were designed to intentionally interfere with Micro Excell's business and contractual relations. (*Id.*) The Counterclaim maintains that Microsoft included in its publications and on its website allegations that Micro Excell and Johnston are "bad guys," "dishonest," and should be "run out of town." (*Id.*)

In addition the these allegations, the Counterclaim asserts three counts. Count One alleges a cause of action for defamation and states:

> Microsoft Corporation intentionally and/or reckless (*sic*) published defamatory, false and malicious statements against Micro Excell, Inc., and Bentley Johnston. Moreover, the statements by their very nature constitute libel per se with presumptive damages.
>
> As a proximate and direct cause of the Microsoft Corporation's conduct, the Counter Plaintiffs were injured and damaged has (*sic*) heretofore alleged.

(Counterclaim ¶¶ 5-6). Count Two asserts a claim for "false light" invasion of privacy and alleges:

> That the Counter Defendants, by their actions, portrayed the Counter Plaintiffs in a false light in the public eye in a manner which is highly offensive.
>
> That the Counter Defendants' actions were done with reckless disregard as to the falsity of their allegations and the false light in which the Counter Plaintiffs were placed.
>
> As a proximate and direct cause of the Microsoft Corporation's conduct, the Counter Plaintiffs were injured and damaged has (*sic*) heretofore alleged.

(*Id.* at ¶¶ 8-10).  Count Three makes a claim for intentional interference with contracts and/or business relations and states:

> There exists (*sic*) contracts and/or business relations between the Counter Plaintiffs and their customers, vendors, distributors and other business parties.
>
> The Counter Defendants have knowledge of these relationships[.]
>
> By their actions, The Counter Defendants have intentionally interfered and continue to interfere with these relationships.
>
> The Counter Plaintiffs have been and will continue to be damaged thereby.

(*Id.* at ¶¶ 12-15).

In response to Microsoft's Motion to Dismiss Counts Two and Three of Counterclaim, or for More Definite Statement as to Count Three, filed on May 23, 2005, Micro Excell and Johnston filed an Amended Counterclaim on June 22, 2005.  The Amended Counterclaim contained the same first two counts.  However, Count Three was amended to state as follows:

> There exist contracts and/or business relations between the Counter Plaintiffs and their customers, vendors, distributors and other business parties.
>
> The Counter Defendants have knowledge of these relationships.  Indeed, based on Microsoft's own publications, their actions were undertaken to "run the bad guys out of town."  This comment, directed by email correspondence, to Microsoft U.S. systems builders was distributed on April 11, 2005.  This correspondence, along with comments made by Microsoft to the Gadsden Times on April 13, 2005, as well as information available on the Microsoft website, indicate that Microsoft

4

knew of the Counter Plaintiffs' ties to the local community and business relationships therein.  Further, these comments indicate that it was Microsoft's intent to sever these relationships and cease the business of Micro Excell, Inc. and Bentley Johnston.

Counter Plaintiffs further state that additional publications and acts of interference may have occurred which Micro Excell, Inc. and Johnston do not have knowledge at this point.

As a result of these actions, as well any other undertakings by Microsoft which may be revealed in discovery, the business relationships of Micro Excell have been damaged.  The general sales of Micro Excell, Inc. have been hampered, and at least one supplier known of at this point has refused to conduct further business with Micro Excell, Inc. based on this matter.

By their actions, the Counter Defendants have intentionally interfered and continue to interfere with these relationships.  The Counter Plaintiffs have been damaged by a loss of business and negative affect (*sic*) on the goodwill and income of these Counter Plaintiffs.  The Counter Plaintiffs will continue to be damaged thereby.

(Amd. Counterclaim ¶¶ 12-16).

## RULE 12(b)(6) STANDARD

Rule 12(b)(6) tests the legal sufficiency of a complaint.  When considering a Rule 12(b)(6) motion, the court assumes that all factual allegations pled in the complaint are true. *United States v. Gaubert*, 499 U.S. 315, 327, 111 S. Ct. 1267, 113 L. Ed. 2d 335 (1991).  All factual allegations are to be construed in the light most favorable to the plaintiff.  *Brower v. County of Inyo*, 489 U.S. 593, 598, 109 S. Ct. 1378, 103 L. Ed. 2d 628 (1989).  Dismissal under Rule 12(b)(6) is appropriate "'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations' of the complaint."  *Rendon v. Valleycrest Prods., Ltd.*, 294 F.3d 1279, 1282 (11th Cir. 2002) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

5

ARGUMENTS[1]

I.     **Microsoft's Motion to Dismiss Counts Two and Three of Counterclaim, or for a More Definite Statement as to Count Three.**

Microsoft seeks dismissal under Rule 12(b)(6) of Micro Excell's claim under Count Two for false light invasion of privacy, arguing that a corporation, as a matter of law, does not have the requisite privacy interest that the false light tort is intended to protect.[2]  Microsoft further seeks dismissal under Rule 12(b)(6) of Count Three of the Counterclaim in its entirety, arguing that it fails to set forth sufficient facts to support a claim for interference.  In the alternative, Microsoft requests that Micro Excel and Johnston be required to provide a more definite statement of their claims under Count Three.

A.     **Count Two for False Light Invasion of Privacy Cannot Be Maintained by a Corporation.**

Microsoft contends that, under Alabama law, the tort of false light is one of four prongs of the tort of invasion of privacy.  *Allison v. Vintage Sports Plaques,* 136 F.3d 1443, 1446 (11th Cir. 1998).[3]  The *Allison* court, applying Alabama law, noted, "[t]he appropriation type of

---

[1] This section summarizes the arguments made by the parties and does not necessarily reflect the conclusions reached by the court.

[2] Microsoft does not, through this motion, seek the dismissal of Johnston's claims under Count Two of the Counterclaim.

[3] The *Allison* court stated:

> Alabama, like most states, has recognized that
> [T]he invasion of privacy tort consists of four distinct wrongs: 1) the intrusion upon the plaintiff's physical solitude or seclusion; 2) publicity which violates the ordinary decencies; 3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye; and 4) the appropriation of some element of the plaintiff's personality for a commercial use.

invasion of privacy, like all privacy rights, centers on damage to human dignity. Damages are usually measured by 'mental distress'--some bruising of the human psyche." *Id.* at 1447 (citing J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 28:6 (1997)). Clearly, Microsoft argues, a corporation is incapable of sustaining such peculiarly "human" injury and, therefore, cannot maintain a claim for invasion of privacy, including false light. Microsoft acknowledges that it has not located any Alabama state court cases which hold that a corporation cannot maintain such an action under Alabama law.  However, Microsoft maintains, it has also not found any Alabama case considering such a claim brought by a corporation. According to Microsoft, every reported false light case under Alabama law has been brought by an individual.

Microsoft highlights *Phillips v. Smalley Maintenance Services, Inc.,* 435 So.2d 705, 708-09 (Ala. 1983), where the Alabama Supreme Court, while answering a certified question from the Eleventh Circuit, adopted the definition of "intrusion upon seclusion" from the Restatement (Second) of Torts § 652B.  *See also Kyser-Smith v. Upscale Communications, Inc.,* 873 F.Supp. 1519, 1525 (M.D. Ala. 1995) (stating, "Alabama courts recognize the tort of invasion of privacy and have adopted the position of the Restatement (Second) of Torts § 652 (1977)").  Microsoft notes that the Restatement provides that "[a] corporation, partnership or unincorporated association has no personal right of privacy. It has therefore no cause of action for any of the four forms of invasion covered by §§ 652B to 652E."  Restatement (Second) of Torts § 652I cmt. c. According to Microsoft, § 652B of the Restatement addresses false light invasion of privacy, and

---

136 F.3d at 1446 (citing *Phillips v. Smalley Maintenance Services, Inc.*, 435 So.2d 705, 708 (Ala.1983)).

thus falls within the rule limiting the claim to natural persons.[4]

Microsoft asserts that courts in other jurisdictions, applying the Restatement or otherwise considering the common-law origins of the tort, have refused to recognize a corporation's claim for false light invasion of privacy. *See Eberhardt v. Morgan Stanley Dean Witter Trust FSB,* 2001 WL 111024 at *6 (N.D. Ill. 2001) (stating, "[t]he court finds that, because Illinois has adopted the Restatement's definition of a false light claim, the Restatement excludes corporations from standing to assert such a claim, considerable authority from other jurisdictions declines to recognize a corporation's false light claim, and plaintiffs have cited no authority supporting such a claim, the Supreme Court of Illinois, if it were deciding this motion, would hold that [the corporate plaintiff] has failed to state a claim under Illinois law"); *Intercity Maintenance Co. v.*

---

[4] The court notes that § 652B of the Restatement is entitled "Intrusion Upon Seclusion," and states:

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

Restatement (Second) of Torts § 652B (1977).  However, § 652E is entitled "Publicity Placing Person In False Light," and states:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
>
> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
>
> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

Restatement (Second) of Torts § 652E (1977).

*Local 254 Service Employees Intern. Union,* 62 F.Supp.2d 483, 506 (D. R.I. 1999) (applying

Restatement and holding that corporation could not maintain action for invasion of privacy),

*aff'd in part, vacated in part, remanded* (on other grounds), 241 F.3d 82 (1st Cir. 2001); *In re*

*Matter of Medical Laboratory Management Consultants,* 931 F.Supp. 1487, 1493 (D. Ariz.

1996) (same); *Southern Air Transport, Inc. v. American Broadcasting Companies, Inc.,* 670

F.Supp. 38, 42 (D. D.C. 1987) (stating that "[a] corporation cannot be offended" for purposes of

a false light claim, and finding that, "[s]ince the District of Columbia follows the Restatement's

formulation of the right of privacy and that source prohibits corporations from bringing suit for

false light claims," the corporate plaintiff's false light claim was due to be dismissed); *Seidl v.*

*Greentree Mortgage Co.*, 30 F.Supp.2d 1292, 1302 (D. Colo. 1998) (holding that a limited

partnership lacked standing to bring a claim for false light under Colorado law); *CNA Financial*

*Corp. v. Local 743 of Int'l Brotherhood of Teamsters,* 515 F.Supp. 942, 946 (N.D. Ill. 1981)

(granting motion to dismiss corporation's claim of invasion of privacy and stating that "[m]any

courts that have considered the question have concluded that a corporation cannot maintain an

action for invasion of the right to privacy and we believe this represents the better reasoned

approach"); *West v. Media General Convergence, Inc.,* 53 S.W.3d 640, 648 (Tenn. 2001)

(finding that, under the Restatement, a corporation cannot bring a false light claim because only

living natural persons, not corporations, have a right to privacy).  *See also U.S. v. Morton Salt*

*Co.*, 338 U.S. 632, 652 (1950) (stating, "corporations can claim no equality with individuals in

the enjoyment of a right to privacy").

      **B.**      **Counter-Plaintiff's Claim for Intentional Interference Should Be Dismissed**

**Because It Fails to Allege Essential Elements of the Claim.[5]**

Microsoft maintains that Count Three of the Counterclaim does not satisfy Rule 8 of the Federal Rules of Civil Procedure and, therefore, fails to state a claim on which relief may be granted.  Although Rule 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. Pro. 8(a), Microsoft argues, a complaint must nevertheless put a defendant "on notice as to the claim being asserted against him and the grounds on which it rests."  *Sams v. United Food & Commercial Workers Intern. Union*, 866 F.2d 1380, 1384 (11th Cir. 1989).

According to Microsoft, Count Three of the original Counterclaim contains no more than a bare recitation of the legal elements of a state-law claim for intentional interference, without reciting any facts in support of the claim.  Microsoft argues that the Count Three fails to identify the "contracts and/or business relations" with which it allegedly interfered.  Further, Microsoft contends, the original Counterclaim does not allege any facts to suggest how it was allegedly aware of the contract or business relations.  Finally, Microsoft asserts, the original count does not identify the means by which the alleged interference was accomplished.  Additionally, Microsoft states, Micro Excel and Johnston have failed to plead sufficient facts to show whether or not Microsoft was a "participant" in the relationship at issue.  Therefore, Microsoft concludes, the

---

[5] These arguments were asserted prior to Micro Excell and Johnston filing their Amended Counterclaim on June 17, 2005.  However, in its Reply brief, Microsoft states:

> . . . Microsoft . . . requests that the Court consider the Motion to Dismiss, and this Reply Brief in support thereof, to apply to the Amended Counterclaim (as well as the initial Counterclaim).

(Microsoft's Reply Brief in Support of Motion to Dismiss, p. 2).

Counterclaim does not plead essential elements of an interference claim.  *See, e.g. Waddell & Reed, Inc. v. United Investors Life Ins. Co.,* 875 So.2d 1143, 1153-54 (Ala. 2003) (stating that, "[c]learly, a party to a contract or a business relationship cannot be liable for tortious interference with that contract or business relationship," and finding the elements of an interference claim under Alabama law include: (1) the existence of a contract or business relation; (2) the defendant's knowledge of the contract or business relation; (3) intentional interference by the defendant with the contract or business relation; (4) the absence of justification for the defendant's interference; and (5) damage to the plaintiff as a result of the interference).

According to Microsoft, in *Roe v. Aware Woman Center for Choice, Inc.*, 253 F.3d 678 (11th Cir. 2001), the Eleventh Circuit addressed a pleading that, similar to the one at issue here, failed to allege facts to support an essential element of a claim.  In that case, the court stated:

> [W]hile notice pleading may not require that the pleader allege a "specific fact" to cover every element or allege "with precision" each element of a claim, it is still necessary that a complaint "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.

253 F.3d at 683.  After reviewing the liberal pleading standards of the Federal Rules, Microsoft notes, the Eleventh Circuit found that the complaint in *Aware Woman Center* contained no allegations, "inferential or otherwise," concerning the defendant's motive, which was an essential element of the claim in that case.  *Id.* at 684.  Accordingly, the court affirmed the dismissal of the claim under Rule 12(b)(6).  *Id.*

Microsoft maintains that a mere conclusory legal allegation without factual support, as found in Count Three here, does not meet the Eleventh Circuit's standard that a defendant be put on notice, not only of the nature of the legal claim, but also the "grounds on which it rests."  *See*

11

*Sams,* 866 F.2d at 1384.  Without knowing the grounds on which the claims rests, Microsoft argues, it cannot frame a responsive pleading.

Should the court determine that dismissal of Count Three under Rule 12(b)(6) is inappropriate, Microsoft moves for a more definite statement pursuant to Rule 12(e).

## II.   Micro Excell and Johnston's Response.

### A.   Johnston and Micro Excell Should Be Allowed to Maintain Their Claims of False Light Invasion of Privacy.

Johnston and Micro Excell note that Microsoft has acknowledged that it cannot locate any Alabama case law which states that a corporation cannot maintain a false light invasion of privacy claim.  Micro Excell maintains that its claim should be allowed as no authority has been cited which dictates its dismissal.

Johnston further asserts that his false light claim should also not be dismissed.  According to counter-plaintiffs, Microsoft has acknowledged that false light claims may be maintained under Alabama law by an individual.  The counter-plaintiffs draw the court's attention to *Phillips v. Smalley Maintenance Services, Inc.,* 435 So.2d 705 (Ala. 1983), where the court adopted the Restatement (Second) of Torts definition of a false light claim.  Under this definition, the invasion of privacy tort includes "putting the plaintiff in a false, but not necessarily defamatory, position in the public eye."  435 So.2d at 708.  According to the counter-plaintiffs, Microsoft, through the filing of this action, press releases and information on its website, has described Johnston as a dishonest "bad guy" who is guilty of software piracy.  The counter-plaintiffs assert that this information has put Johnston in a false light and has had a negative effect on his livelihood and business.

12

**B.      Johnston and Micro Excell Should be Allowed to Maintain Their Claims of Intentional Interference with Business Relations.**

Counter-plaintiffs draw the court's attention to the additional allegations presented in Count Three of their Amended Counterclaim.  Counter-plaintiffs have produced an article entitled "Microsoft sues Micro Excell," which appeared on the front page of the April 13, 2005 edition of *The Gadsden Times*.  The article states in part:

> Bonnie MacNaughton, a Microsoft senior attorney, said firms that sell legitimate software often ask the company for protection against unlicensed sales.
>
> "As part of the regular part of that program, we routinely test . . . based upon leads we receive from other system builders or resellers and leads that we receive from customers, and based upon our own investigations and research," she said.
>
> MacNaughton said Microsoft made a "test purchase" at Micro Excell in April 2004.  The suit claims that Johnston and Micro Excell distributed, to an investigator, "materials purported to be Windows XP Pro software and/or related components."
>
> The suit claims the materials were determined to be counterfeit. . . .

Counter-plaintiffs also point to a portion of Microsoft's website located at http://www.microsoft.com/piracy/partners/states/Alabama.htm, which states:

> Lawsuit against an Alabama Company for Distribution of Counterfeit and Infringing Software
> Company Takes Legal Action against Company for Distribution of Counterfeit and Infringing Software
>
> As part of Microsoft Corp.'s commitment to honest and legitimate resellers in the channel, the company filed a lawsuit against a Gadsden, AL business for the alleged distribution of computers with unauthorized copies of Microsoft software programs loaded on the hard disk drives and counterfeit software programs and/or related components. Private investigators acquired the computers and software and/or related components as a part of Microsoft's efforts to identify businesses that are distributing counterfeit and infringing software and software components. The lawsuit against Micro Excell, Inc. was filed on April 7, 2005, alleging the distribution of counterfeit and infringing Microsoft software and/or related

13

components to investigators, according to the complaint. The defendant was contacted by Microsoft and asked to halt the activities prior to the lawsuit being filed.

Filed in the U.S. District Court for the Northern District of Alabama

Microsoft Corporation v. Micro Excell, Inc, of Gadsden, Alabama, alleging distribution of counterfeit and infringing Windows XP and/or related components.
(Case No.CV-05-PT-0730-M)

Counter-plaintiffs have also produced an email from Microsoft, which was allegedly sent to all

U.S. systems builders.  The email states, in part:

WE'RE COMMITTED TO HELPING YOU RUN A SUCCESSFUL BUSINESS BY HELPING RUN THE BAD GUYS OUT OF TOWN.

TO HELP OUR HONEST SYSTEM BUILDER PARTNERS, RESELLERS WHO DISTRIBUTE ILLEGAL SOFTWARE OR COMPONENTS ARE BEING PURSUED.

At Microsoft(R), we are dedicated to helping level the playing field for honest system builders.  As part of this commitment, we will continue to take aggressive legal actions against software piracy.  Recently, we filed lawsuits against the companies listed below who have allegedly distributed illegal software or components.

Micro Excell was one of the alleged perpetrators listed on the email.  According to counter-

plaintiffs, the information disseminated by Microsoft through these releases and interviews paints

Micro Excell and Johnston as dishonest "bad guys."

Counter-plaintiffs argue that Microsoft should have reasonably anticipated that this

information would affect Micro Excell's general business with the public and its relationship

with its vendors and suppliers.  Counter-plaintiffs assert that these disseminations by Microsoft

have adversely affected Micro Excell's business and Johnston's livelihood.  According to

14

counter-plaintiffs, at least one of Micro Excell's suppliers has refused to continue doing business with it because of Microsoft's disseminations.

Under Alabama law, counter-plaintiffs note, the elements for the tort of interference with business relations are:

> (1) The existence of a contract or business relation;
> (2) Defendant's knowledge of the contract or business relation;
> (3) Intentional interference by the defendant with the contract or business relation;
> (4) Absence of justification for the defendant's interference; and
> (5) Damage to the plaintiff as a result of defendant's interference.

*Gross v. Lowder Realty Better Homes and Gardens,* 494 So.2d 590, 597 (Ala. 1986) (footnote omitted).  According to counter-plaintiffs, the facts discussed above demonstrate that these elements may be satisfied here.  Counter-plaintiffs assert that Micro Excell carries on business relationships with its customers and suppliers.  Counter-plaintiffs argue that knowledge of these relationships, as well as intentional interference with them, is demonstrated by Microsoft's aggressive actions to "run" Micro Excell "out of town."  Even if some infringement has occurred in this matter, counter-plaintiffs insist, that infringement does not give Microsoft the right to seek the cessation of Micro Excell's business.  Further, counter-plaintiffs assert, Micro Excell's business relationships with customers and suppliers have been damaged by Microsoft's actions.

## III.    Microsoft's Reply.

### A.    Counter-Plaintiffs Cite No Authority in Support of Micro Excell's False Light Invasion of Privacy Claim.

Microsoft argues that counter-plaintiffs do not cite any authority, from Alabama or any other jurisdiction, to support their contention that a corporation has a privacy interest to support a claim for false light invasion of privacy.  Microsoft agrees with Micro Excell and Johnston that

Alabama has adopted the definition of a false light invasion of privacy claim from the Restatement (Second) of Torts.  However, Microsoft contends, the Restatement limits such a claim to natural persons:

> A corporation, partnership or unincorporated association has no personal right of privacy. It has therefore no cause of action for any of the four forms of invasion covered by §§ 652B to 652E. It has, however, a limited right to the exclusive use of its own name or identity in so far as they are of use or benefit, and it receives protection from the law of unfair competition. To some limited extent this may afford it the same rights and remedies as those to which a private individual is entitled under the rule stated in § 652C[, discussing appropriation of name or likeness].

Restatement (Second) of Torts § 652I cmt. c.  Because Alabama follows the Restatement, Microsoft maintains, it is clear that Alabama law does not and will not recognize a false light claim of a corporation.  According to Microsoft, this explains why there is no reported decision in Alabama permitting a corporation to pursue such a claim.  In fact, Microsoft asserts, it appears that every court to have addressed the issue has rejected a false light claim brought by a corporation.

**B.      Counter-Plaintiffs' Claim for Intentional Interference, Even as Amended, Fails to Identify Any Contract or Business Relation Subject to the Claim.**

It is Microsoft's position that counter-plaintiffs' Amended Counterclaim fails to correct the deficiencies of the original Counterclaim as discussed in its Motion to Dismiss or for a More Definite Statement.  Microsoft acknowledges that the Amended Counterclaim does identify the allegedly defamatory statements upon which Micro Excell and Johnston base their claims.  However, Microsoft argues, the Amended Counterclaim still fails to identify any contract or business relation with which it allegedly interfered.  As a matter of law, Microsoft asserts, it could not have intentionally interfered with an unknown and unidentified business relation or

16

contract.

According to Microsoft, the Amended Counterclaim's incomplete and conclusory allegations of interference simply do not meet the minimum standards of Rule 8.  If there were a specific contract or business relation supporting this claim, Microsoft contends, counter-plaintiffs would have identified it in response to Microsoft's Motion to Dismiss, which specifically pointed out this deficiency.  Further, Microsoft states, counter-plaintiffs have failed to allege that it was not a "participant" in the business relation or contract at issue.  Microsoft maintains that such an allegation is an essential element of an interference claim.  *See Waddell & Reed, Inc. v. United Investors Life Ins. Co.*, 875 So.2d 1143, 1157 (Ala. 2003) (stating, a "'participant' [is] an individual or entity who is not a party, but who is essential, to the allegedly injured relationship and who cannot be described as a stranger . . . If a participant has a legitimate economic interest in and a legitimate relationship to the contract, then the participant enjoys a privilege of becoming involved without being accused of interfering with the contract").  **IV.   Microsoft's Motion to Strike Defendants' Eighth Affirmative Defense.**

According to Microsoft, Micro Excel and Johnston's Eight Affirmative Defense is without merit and should be stricken from their Answer, without leave to amend, pursuant to Rule 12(f) of the Federal Rules of Civil Procedure.  Microsoft argues that Micro Excel and

17

Johnston's claims of "trademark and copyright misuse and antitrust violations" are legally insufficient. Microsoft maintains that allowing defendants to litigate these factually and legally unsupported allegations will prejudice it by unnecessarily exposing the company to increased expenses and burdensome discovery. Further, Microsoft asserts, allowing the defenses would be contrary to the interests of judicial economy.[6]

## CONCLUSIONS  OF  THE  COURT

Based upon the discussion above, the court will dismiss the "false light" counterclaim of defendant Micro Excell, Inc. in Count Two. The court will also dismiss Counterclaim Count Three with leave for defendants to amend to specifically state the names of parties involved in the alleged relationship(s) and to address, if they factually can, other issues raised by the plaintiff, as discussed above. The eighth affirmative defense of the defendants will be stricken.

This 28th of June, 2005.


**ROBERT B. PROPST**
**SENIOR UNITED STATES DISTRICT JUDGE**

---

[6] Defendants do not oppose this Motion.

18